Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAWNYA RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IDAHOAN FOODS LLC, a Delaware company d/b/a WWW.IDAHOAN.COM,<br><br>Defendant. | Case No. 2:25−cv−04357−DMG−AS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Californians increasingly conduct their lives and activities over the Internet, sharing often sensitive personal information with companies by using company websites rather than landline telephones.

2. Defendant created its own online presence at ***idahoan.com*** (the "Website") to communicate with potential customers, encouraging engagement with this electronic medium – Defendant's Website -- as an alternative to the telephonic or in-person interaction. Defendant did this to enable potential customers to obtain information from and about Defendant's insurance products, and to enable Defendant to elicit information from potential customers about their specific needs and desires.

3. Defendant well understands that its Website is a means to communicate privately with potential customers – a consumer expectation that is not only reasonable, but actively nurtured by Defendant. Indeed, Defendant assures visitors that ***"Idahoan values your privacy."*** *See* https://idahoan.com/privacy-policy/ (last accessed February 2025).

4. Defendant's promise is false. In reality, Defendant aids a third party (Meta Systems, Inc., owner of Facebook and Instagram) to surveil every detail of its interactions with visitors to its Website, thereby allowing Meta to create detailed portraits of Website visitors' interests, needs, and desires and bombard them with advertising.[1]

5. In short, Defendant falsely promised Website visitors that it would protect their privacy, but then secretly monetized their personal information by enabling Meta to spy on those visitors, surveil their journey across the web, track their location and lifestyle habits, and bombard them with targeted advertising. Rather than candidly disclose this arrangement, Defendant explicitly and implicitly assured Website visitors that their identities and privacy would be protected. In short, Defendant lied.

6. Plaintiff visited Defendant's website several times, most recently in mid-2024. Without Plaintiff's or class members' knowledge or consent, Defendant deployed

---

[1] While the allegations in this Complaint focus on Meta, the website plays host to a cornucopia of other invasive tracking and surveillance products, details of which will be explored in discovery.

Meta's de-anonymization process to identify Plaintiff using electronic impulses generated from Plaintiff's device, as further described herein. Defendant's installation of the Meta tracing process violates California's Trap and Trace Law, codified at California Penal Code § 638.51.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) and based on diversity of citizenship under 28 U.S.C. §§1367, 1441, 1446, and 1453. The alleged amount in controversy exceeds the sum of $5,000,000.00 exclusive of costs and interest, and has more than 100 members in the proposed putative class. Minimal diversity is also present, as Plaintiff is a citizen of California, and Defendant is a Delaware limited liability company. In its Notice of Removal of Action (Dkt. 1), Defendant asserted that removal to this Court was proper based on these grounds.

8. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. 1391(b) and 18 U.S.C. § 1441(a) because Defendant does business within the State of California and Plaintiff resides within the County of Los Angeles.

## PARTIES

9. Plaintiff is a resident and citizen of California.

10. Defendant is an entity that sells dehydrated potato products.

## FACTUAL ALLEGATIONS

**Defendant's Website Spies on Visitors.**

11. Defendant operates the Website. Defendant has installed on its Website a spyware pixel created by Meta in order to identify website visitors (the "Meta Spyware").

12. The Meta Spyware acts via a process known as "fingerprinting." Put simply, the Meta Spyware collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data Meta has acquired and accumulated

about hundreds of millions of Americans. The Meta Spyware stores both first- and third-party cookies on the devices of unsuspecting users, including Plaintiff, via their browser.

13. The Meta Spyware gathers device and browser information, geographic information, referral tracking, and url tracking by running code or "scripts" on the Website to send user details to Meta.

14. One leading defense law firm specializing in privacy litigation summarizes the Meta Pixel this way:

> ***"The Meta Pixel is a piece of code embedded in the HTML code of a website. When a user visits the website, the Pixel sends Meta information about the user's actions on the website. The Pixel is customizable, allowing the website to track specific user characteristics by changing certain variables in the code. Some Pixel parameters allow Meta to link a user's online actions with their offline purchases in physical stores. . . . Think of the Pixel as a door installed in the website, with Meta on one side of the door and the user on the other. Meta can gather data and see how the user interacts with the website: if they enter their email, if they click on a link, if they add something to their cart. Meta and the website can use this data to better target ads."***

*See* https://www.kslaw.com/news-and-insights/the-meta-pixel-an-open-door-to-sensitive-data-and-data-privacy-suits (last accessed December 2024). The preceding summary is shown visually as follows:



15. Plaintiff is both (1) genuinely interested in the goods, services, and information available on Defendant's website, and (2) a consumer privacy advocate who works as a "tester" to ensure that companies abide by the privacy obligations imposed by California law. As the Ninth Circuit recently made exceptionally clear that it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes, and that Courts must not make any impermissible credibility or standing inferences against them. *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

16. As shown by the image below identifying the Meta tracking scripts operating on Defendant's website, the Meta Spyware (1) begins to collect information the moment a user lands on the Website before any pop-up or cookie banner advises users of the invasion or seeks their consent; and (2) requests and transmits other identifying personal information to Meta that allows Meta to link a user's behavior on Defendant's website to the visitor's social media accounts:



17. The Meta Spyware also requests, validates, and transmits other identifying information, including a website visitor's phone numbers and email addresses.

FIRST AMENDED CLASS ACTION COMPLAINT

18. By sharing Plaintiff's and class members' personal and de-anonymized data with Meta, Defendant effectively "doxed" them. In other words, Plaintiff and class members suffered injury under CIPA. The California Supreme Court has repeatedly held that a violation of CIPA itself constitutes an injury sufficient to convey statutory standing. See, e.g., *Ribas v. Clark*, 38 Cal.3d 355, 365 (1985); *Heller v. Norcal Mut. Ins. Co.*, 8 Cal.4th 30, 53 (1994); *Kimmel v. Goland*, 51 Cal.3d 202, 211 (1990).

19. An invasion of privacy, such as this, causes a concrete harm to consumers. "Violations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598 (9th Cir. 2020). "A right to privacy encompasses the individual's control of information concerning his or her person." *Id.* (internal quotations and citations omitted). Statutes such as CIPA "codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.*

20. By capturing and sharing Plaintiff's data without her consent, Defendant has invaded Plaintiff's privacy.

21. As a result of this invasion of privacy, Plaintiff has suffered an injury in fact.

22. The capturing and sharing of Plaintiff's data by Defendant constitutes an invasion of privacy. Plaintiff felt upset, disturbed, and/or violated upon learning that Defendant captured her data and shared it with Meta. This invasion of privacy constitutes an insult to Plaintiff's dignity.

23. Plaintiff and class members provided Defendant with valuable information (the free collection of data used to fingerprint and de-anonymize Plaintiff and Class Members) without their consent or knowledge.

24. Defendant captures this data without consent to obtain valuable data from Plaintiff and class members. The entire purpose of CIPA is to provide California consumers with a means to pursue statutory damages for the breach of their privacy when a company records them without their knowledge. The judgment of the California Legislature indicates that the alleged violations of Plaintiff's statutory rights under CIPA constitute concrete injury in fact.

25. There is a financial incentive for Defendant and Meta to collect consumer data. The consumer data is linked to Plaintiff's and the class' activities on the site, which is then monetized through, inter alia, targeted advertisement. For instance, if Plaintiff views a certain item on Defendant's Website, data regarding such view is captured and used to tailor other advertisement across different websites—this is called "retargeting." Facebook itself states that the pixel can be used to: "Build high-intent advertising audiences to retarget visitors as well as find new in-market shoppers[2]." Moreover, the consumer data is also used to train third party machine learning models. Defendants code the pixel into their website to: "[l]everage Meta's advanced machine learning to make sure that your ads are shown to people who are most likely to take the desired action on your website.[3]"

26. None of this would be possible if not for Defendant's embedding of the Pixel on its Website. Plaintiff's data has value and was taken from her through subterfuge and deception without consideration, without notice, and without consent. The same is true for the data of the putative class.

27. Thus, Plaintiff and putative class members "have provided valuable data to [Defendant] and have received no money in return." *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 U.S. Dist. LEXIS 244695, at *52 (N.D. Cal. Dec. 22, 2021) (collecting cases); see also Klein v. Facebook, Inc., 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022) ("[B]y providing Facebook with their information and attention, they 'lost money or property.'").

28. This collection of data goes far beyond what is necessary to operate a Website. The Meta Pixel does not only collect IP addresses for technical reasons. Instead, this software collects data from the user's device and browser, and attempts to match the information of individual visitors of the Website to its own database of personal information. Stated simply, the Meta Pixel is not embedded to Defendant's Website for a functional reason, but instead for profit.

---

[2] https://www.facebook.com/business/help/207429093215167
[3] Id.

**The Meta Spyware is a Trap and Trace Device.**

29. California Penal Code § 638.50(c). California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  California Penal Code § 638.50(c).  Courts have held that tracking pixels such as the one used by Defendant may qualify as illegal pen registers or trap and trace devices under CIPA. *See Greenley v. Kochava, Inc.,* 684 F.Supp.3d 1024 (2023)*; Moody v. C2 Educational Systems Inc.*, 2024 WL 3561367 (C.D. Cal. July 25, 2024); *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 65409 (C.D. Cal. Jan. 8. 2025).

30. The Meta pixel allows Defendant to link to a visitor's Facebook account by placing a small piece of code on the Website that downloads its code to user devices, tracks visitor activity and reports it to Meta, thereby allowing Meta and its platforms (like Facebook and Instagram) to identify and match those visitors to their Facebook and Instagram accounts, enabling Defendant to target them with ads based on their actions on the website.  This is accomplished through cookies stored on the user's devices, through the browser. By Meta's own admission, "we collect some information about you even if you don't have an account[4]." Even if a user does not have Facebook or Instagram accounts, the pixel collects other personal information about them, as stated above.

31. The Meta Spyware is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Chinese government to obtain their phone number and other identifying information.

---

[4] https://www.facebook.com/privacy/policy?section_id=3-HowIsYourInformation

32. The Meta Spyware is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective.

33. Defendant did not obtain Plaintiff's express or implied consent to be subjected to data sharing with Meta for the purposes of fingerprinting and de-anonymization.

34. CIPA imposes civil liability and statutory penalties for the installation of trap and trace software without a court order. California Penal Code § 637.2; s*ee also Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024).

35. Defendant did not obtain Plaintiff's or class members' express or implied consent to be subjected to data sharing with Meta for the purposes of fingerprinting and de-anonymization.

## CLASS ALLEGATIONS

36. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All California citizens who visited Defendant's website while physically located in California and whose personal information was shared with Meta or other third parties by Defendant without their effective and informed prior consent.**

37. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be at least 50. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

38. COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

   a. Whether Defendant shared class members' personal information with Meta or other third parties;

  b. Whether Defendant obtain effective and informed consent to do so;

  c. Whether Plaintiff and Class Members are entitled to statutory penalties; and

  d. Whether Class Members are entitled to injunctive relief.

39. <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose personal information was shared by Defendant, Plaintiff is asserting claims that are typical of the Class.

40. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

41. <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

42. <u>AMOUNT IN CONTROVERSY</u>: Inclusive of all class member claims, Plaintiff estimates that the amount in controversy is approximately $3,000,000-$5,000,000. The precise amount in controversy can be determined from Defendant's records.

## CAUSE OF ACTION
## Violations of the California Trap and Trace Law
## Cal. Penal Code § 638.51

43. California's Trap and Trace Law is part of the California Invasion of Privacy Act ("CIPA") codified at Cal. Penal Code 630, *et. seq*.

44. CIPA was enacted to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat

to the free exercise of personal liberties." CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

45. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

46. California Penal Code §638.51 provides that "a person may not install or use…a trap and trace device without first obtaining a court order…" § 638.51(a).

47. Defendant uses a trap and trace process on its Website by deploying the Meta Spyware on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the Meta Spyware is solely to identify the source of the incoming electronic and wire communications to the Website.

48. Courts have held that tracking pixels may qualify as illegal pen registers or trap and trace devices under CIPA. *See Greenley v. Kochava, Inc.,* 684 F.Supp.3d 1024 (2023)*; Moody v. C2 Educational Systems Inc.*, 2024 WL 3561367 (C.D. Cal. July 25, 2024); *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 65409 (C.D. Cal. Jan. 8. 2025).

49. To the extent that a court requires additional authority to determine the meaning or application of a statute, it "may properly rely on the legislative history of subsequent enactments to clarify the Legislature's intent regarding an earlier enacted statute," and, "while the concept of subsequent legislative history may seem oxymoronic, it is well established that the Legislature's expressed views on the prior import of its statutes are entitled to due consideration." *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1408 (Cal. App. Ct. 2013); *Ailanto Properties, Inc. v. Cty. of Half Moon Bay*, 142 Cal. App. 4th 572, 589 n. 13 (Cal. App. Ct. 2006); *Cty. of Long Beach v. California Citizens for Neighborhood Empowerment*, 111 Cal. App. 4th 302, 307 n. 6 (Cal. App. Ct. 2003).

50. The subsequent legislative history to the various proposed amendments to CIPA establish that the California Legislature intended to apply the statute tracking pixel technology implemented as alleged.

51. California Senate Bill 690 ("SB 690") was introduced in the 2025-2026 Regular Session of the California Legislature. SB 690 would, *inter alia*, "exempt communication intercepts for a commercial business purpose from those prohibitions" of CIPA. Crimes: Invasion of Privacy, SB-690, California Legislature, Senate (2025).

52. In its original format, the senate bill would have amended section 638.50 of the Penal Code with this additional subsection: "*(4) This bill would make its provisions retroactive and applicable to any case pending as of January 1, 2026.*" However, on May 29, 2025, the California Legislature amended SB 690 **to remove** the retroactivity clause. It is this amended version of SB 690, without the retroactivity clause, that passed the California Senate unanimously.

53. This amendment makes it abundantly clear that the California Legislature intended for CIPA to apply to tracking pixel technology implemented such as the Meta Pixel, until and unless another amendment makes such practices lawful or exempt from this statute. Accordingly, subsequent legislative history relating to CIPA makes clear that Defendant's action are plainly within the scope of activities which violate CIPA.

54. Defendant did not obtain consent from Plaintiff and class members before using trap and trace technology to identify users of its Website, and has violated Section 638.51.

55. CIPA imposes civil liability and statutory penalties for violations of §638.51.

56. Therefore, Plaintiff and class members are entitled to the relief set forth below.

## **PRAYER**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.    An order certifying the class and making all appropriate class management orders;

2.    Statutory damages pursuant to CIPA;

3.    Reasonable attorneys' fees and costs; and

4.    All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

**<u>PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY</u>**

Respectfully submitted this 6th day of August, 2025.

By: _____
Todd M. Friedman, Esq.
Law Offices of Todd M. Friedman, P.C.
Attorney for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT

Filed electronically on this 6th day of August, 2025, with:

United States District Court CM/ECF system.

Notification sent electronically on this 6th day of August, 2025, to:

Honorable Dolly M. Gee
United States District Court
Central District of California

And All Counsel of Record as Recorded On The Electronic Service List

<u>/s/ Todd M. Friedman, Esq.</u>
TODD M. FRIEDMAN

FIRST AMENDED CLASS ACTION COMPLAINT